UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DIANE E. NABER,

                Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:11-cv-05141-RBL-KLS

REPORT AND RECOMMENDATION

Noted for November 18, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On October 11, 2006, plaintiff filed an application for disability insurance benefits,

REPORT AND RECOMMENDATION - 1

alleging disability as of April 1, 2006, due to depression, hypertensive cardiovascular disease/hypertension, headaches, acid reflux disease, and severe colitis. See Administrative Record ("AR") 17, 117, 133. Her application was denied upon initial administrative review and on reconsideration. See AR 17, 76, 80, 85, 88. A hearing was held before an administrative law judge ("ALJ") on March 25, 2009, at which plaintiff, unrepresented by counsel, appeared and testified, as did a vocational expert. See AR 39-73.

On June 24, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 17-30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 3, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981. On February 18, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on May 3, 2011. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; and (2) in finding her to be capable of performing other work existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and thus recommends that the defendant's decision be reversed, and that this matter be remanded for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the

REPORT AND RECOMMENDATION - 2

proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences

REPORT AND RECOMMENDATION - 3

"logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff takes issue with the following findings made by the ALJ:

REPORT AND RECOMMENDATION - 4

. . . On psychological consultative examination with psychologist John T. Lloyd, Ph.D., in January of 2006, the claimant appeared to be in moderate distress. But she was well groomed, with clean, neat clothing. She admitted to some depression, but Dr. Lloyd felt the depression was somewhat mild. On examination, her verbal presentation was "quite congruent and contiguous between statement and response." Thought content revealed no abnormalities and no impairment of reality testing. Abstract thought appeared to be adequate. The claimant was able to recall 3 words immediately, 2 after 5-minutes of an intervening task, which the doctor said might indicate some cerebral difficulties. But she knew the name of the president, the vice-president, and past president. She knew the names of the states, country, and ocean surrounding the state of Washington. Her fund of knowledge appeared to be quite intact. In terms of attention and concentration, she could spell the word 'world' forward and backward without difficulty. Serial 3's were conducted rapidly with one error in 14 attempts. Serial 1's were conducted at an average pace with no errors in 14 attempts. Dr. Lloyd noted that the claimant got lost and had some difficulty at times, but concluded her performance on examination indicated adequate attentional skills. Ex IF/3.

After testing, however, Dr. Lloyd diagnosed cognitive disorder, not otherwise specified and dysthymic disorder, noting the claimant had significant problems with memory. He explained that mental status examination showed some weakness with attentional skills. Testing displayed obvious weaknesses in attentional skills, and neuropsychological screening using the Trail Making Test indicated significant possible problems. As regards her dysthymic disorder, the doctor noted significant difficulties, on a daily basis, with poor appetite, some sleep difficulties, low energy, poor concentration ability and memory, and a feeling of hopelessness. Ex IF/5.

Dr. Lloyd assessed a global assessment of functioning (GAF) score of 65, explaining that from a psychological standpoint of view, the claimant had mild to moderate symptoms, which interfered with social and occupational functioning. Ex IF/5. In his clinical source statement, Dr. Lloyd noted that the claimant had been out of the workforce and that she admitted to some frustrations associated with this. The doctor opined that "psychologically, this has taken its toll and has lowered her mood and impaired some of her attentional skills." Ex IF/6. I have considered this opinion, but find no evidence in the rest of the medical evidence of record to support the doctor's finding of impaired attention or memory skills. The doctor himself reported that the claimant's performance on mental status examination indicated adequate attention skills. The fact that testing showed impaired attention and memory could easily be attributed to the "moderate distress" the doctor noted at the onset of the evaluation. The alleged cognitive impairment is inconsistent with the bulk of the record. For example, examination in May of 2008 with Dr. [Robert] Rubinstein was normal in cranial nerves, motor strength/tone, coordination, gait, reflexes orientation, memory, and language.

REPORT AND RECOMMENDATION - 5

Ex 23F/44. The undersigned finds insufficient support in the record of the cognitive impairment found by Dr. Lloyd.

AR 25-26. Plaintiff argues these are not valid reasons for rejecting Dr. Lloyd's opinion. The undersigned agrees.

It is true that Dr. Lloyd stated plaintiff's mental status examination indicated "adequate attention skills." AR 196. But as noted by the ALJ, plaintiff did display "significant difficulties with sustained attention" on psychological testing, so much so that Dr. Llyod found she "was in the impaired range . . . indicative of cerebral involvement." AR 198. The ALJ states plaintiff's poor testing performance "could easily be attributed to the 'moderate distress'" she was noted to be in at the outset of the evaluation. AR 26. If this were the case, however, than likely plaintiff would have performed similarly during the mental status examination as well. In any event, the ALJ appears to improperly be acting as her own expert medical witness in attempting to interpret the results of the psychological testing.[1]

While there certainly does appear to be a discrepancy between the mental status findings and the results of the psychological testing, and although the ALJ is responsible for resolving any conflicts or ambiguities in the medical evidence, she did not provide an adequate explanation for how she came to her resolution thereof here. In addition, the examination results Dr. Rubenstein obtained do not necessarily contradict those stemming from the psychological testing Dr. Llyod administered. Dr. Rubenstein may have found plaintiff to be normal in regard to cranial nerves, motor strength, muscle tone, coordination, gait, reflexes, orientation, memory, and language, but as pointed out by plaintiff, these findings do not specifically address the areas of concentration

---

[1] See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for physician's findings and opinion); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

REPORT AND RECOMMENDATION - 6

and attention. See AR 516-17. Nor does the fact that Dr. Rubenstein could not "come up with a single neurologic illness that c[ould] encompass all of [plaintiff's] neurologic complaints" call into question Dr. Lloyd's findings, as it does not appear Dr. Rubenstein was focusing on issues of concentration and attention at the time. Id.

Defendant argues the ALJ properly rejected the findings of Dr. Lloyd by also noting they were inconsistent with the evidence in the record as a whole. The ALJ did state she found "no evidence in the rest of the medical evidence of record to support" those findings. AR 26. But as discussed in greater detail below, the record does contain such evidence, namely the findings of Dr. Kristine Harrison, Psy.D., and Cynthia Collingwood, Ph.D, two non-examining consulting psychologists who reviewed the record, including it seems the evidence from Dr. Lloyd. See AR 293-95, 297-309, 321. See Lester, 81 F.3d at 830-31 (non-examining physician's opinion may constitute substantial evidence if it is consistent with other independent evidence in record); Tonapetyan, 242 F.3d at 1149. Defendant goes on to argue that the ALJ noted plaintiff worked as a payroll manager after her alleged onset date of disability, and that a conflict between a claimant's activities and the opinion of a medical source is a legitimate basis for discounting that opinion. But the ALJ did not specifically reject Dr. Lloyd's opinion on this basis, nor can it be reasonably implied that she did so. See AR 26-27.

In addition to Dr. Lloyd's evaluation report, the record also contains a psychiatric review technique form completed by Kristine Harrison, Psy.D., in early February 2007, in which she found plaintiff to have moderate difficulties in concentration, persistence or pace. See AR 307. At the same time, Dr. Harrison completed a mental residual functional capacity assessment form, in which she also found plaintiff to be moderately limited in her ability to maintain attention and concentration for extended periods. See AR 293. Dr. Harrison further opined that plaintiff could

REPORT AND RECOMMENDATION - 7

"sustain attention on simple tasks." AR 295.  These findings were affirmed in early May 2007, by Cynthia Collingwood, Ph.D. See AR 321.

In her decision, the ALJ found plaintiff would be able to interact with supervisors and a few co-workers, and should have only minimal interaction with the general public, although this last limitation was due to plaintiff's physical impairments. See AR 21.  These mental functional limitations, the ALJ stated, were "generally consistent with the opinions of the state agency medical consultants," including Drs. Harrison and Collingwood. AR 28.  But the limitations the ALJ adopted merely concern the area of social functioning, and thus cannot be said to adequately account for the moderate limitations in concentration, persistence and pace Dr. Harrison and Dr. Collingwood found, nor for that matter Dr. Lloyd's findings.

Defendant offers the following defense of the ALJ's treatment of Dr. Harrison's and Dr. Collingwood's findings:

> None of Plaintiff's treating physicians observed difficulties arising from the alleged mental impairments.  For instance, Sheila Lally, D.O.[,] indicated Plaintiff appeared oriented, pleasant, cooperative, and in no apparent distress ([AR] 324, 326).  Jeremy Idjadi, M.D.[,] made similar notations ([AR] 442-43).  Other than the opinion by Dr. Lloyd that the ALJ reasonably rejected, Plaintiff points to no evidence supporting Dr. Harrison's [and Dr. Collingwood's] opinion that Plaintiff had limitations with detailed tasks.
> It appears that Dr. Harrison based her opinion on Dr. Lloyd's assessment.  When asked for the documentation of factors that evidence the disorders, Dr. Harrison listed a cognitive disorder ([AR] 298).  As discussed above, the ALJ reasonably rejected Dr. Lloyd's assessment of a cognitive impairment.  Thus, the ALJ properly considered and rejected Dr. Harrison's [and Dr. Collingwood's] opinion as to the functional limitations alleged in Dr. Lloyd's report based on a cognitive impairment.

ECF #14, pp. 10-11.  But while it may be that neither Dr. Lally nor Dr. Idjadi noted any issues with plaintiff's attention or concentration, there also is no evidence they were looking for such. See AR 323-26, 441-44.  Indeed, both physicians were specifically concerned with plaintiff's physical impairments and complaints. See id.  Nor do the actual mental functional findings they

REPORT AND RECOMMENDATION - 8

recorded rule out the alleged problems in attention or concentration. See id.

More importantly, though, the ALJ did not provide this as a basis for rejecting the mental functional limitations assessed by Drs. Harrison and Collingwood. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss). Indeed, the ALJ indicated she was adopting their findings rather than rejecting them, stating they were consistent with the mental functional limitations she adopted. Lastly, as discussed above, the ALJ did err in rejecting the findings of Dr. Lloyd, and therefore even if the ALJ had stated this as a basis for rejecting the findings of Dr. Harrison and Dr. Collingwood, it would have been error for her to do so.

II.     The ALJ's Step Five Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four thereof to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability

REPORT AND RECOMMENDATION - 9

to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> **. . . [T]he claimant has the residual functional capacity to perform sedentary work . . . in that she is able to lift and/or carry no more than 10 pounds, to sit about 6 hours in an 8-hour workday, and to stand and/or walk at least 2 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above amount. The claimant has occasional postural limitations; she is limited to occasional overhead reaching; she must avoid working around concentrated exposure to chemicals, fumes, gases, cold temperatures. Due to gastrointestinal upset the claimant should have minimal interaction with the general public; she is able to interact with supervisors and a few coworkers.**

AR. 21 (emphasis in original). As discussed above, the ALJ erred in rejecting the opinion of Dr. Lloyd and did not properly evaluate the findings of Drs. Harrison and Collingwood. As such, it cannot be said at this time that the ALJ's assessment of plaintiff's residual functional capacity is supported by the substantial in the record.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

REPORT AND RECOMMENDATION - 10

Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 70. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and past work experience as plaintiff – would be able to perform other jobs. See id. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See AR 29. Again, however, in light of the ALJ's errors in evaluating the medical evidence in the record, and in assessing plaintiff's RFC, it also cannot be said that the ALJ's step five determination is supported by substantial evidence.

Plaintiff also argues the ALJ erred here in failing to make specific findings as to whether she had transferable skills. When the ALJ issued her decision, plaintiff was 55 years old, and thus was considered to be an individual of "advanced age" at that time. See AR 28; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d), (f). In that decision, the ALJ found plaintiff had at least a high school education, and had acquired skills from her past relevant work that were transferable to other occupations having jobs that existed in significant numbers in the national economy. See AR 29. The ALJ went on to find in relevant part as follows:

> The vocational expert was asked if any occupation exist[s] which could be performed by an individual with the same age, education, past relevant work

REPORT AND RECOMMENDATION - 11

> experience, and residual functional capacity as the claimant, and which
> require skills acquired in the claimant's past relevant work but no additional
> skills. The vocational expert responded and testified that such an individual
> would have skills, acquired from past relevant work, that would readily
> transfer to the job of payroll clerk, . . . which is sedentary, semi-skilled work.
> . . .

Id. The vocational expert's testimony upon which the ALJ relied here, consisted of the response of "I think there would be jobs such as a payroll clerk," in regard to whether plaintiff's past work experience would "generate any skills that could be readily transferred to skilled or semi-skilled work." AR 70.

Social Security Ruling ("SSR") 82-41 provides in relevant part:

> When the issue of skills and their transferability must be decided, the . . . ALJ
> is required to make certain findings of fact and include them in the written
> decision. Findings should be supported with appropriate documentation.
>
> When a finding is made that a claimant has transferable skills, the acquired
> work skills must be identified, and specific occupations to which the acquired
> work skills are transferable must be cited in the . . . ALJ's decision. . . . It is
> important that these findings be made at all levels of adjudication to clearly
> establish the basis for the determination or decision for the claimant and for a
> reviewing body including a Federal district court.

Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1223 (9th Cir. 2009) (quoting SSR 82-41, 1982 WL 31389 *7). In addition, "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age . . . , there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f)).

In Bray, the ALJ did "not identify the particular skills" that the claimant possessed, nor did the ALJ – or the vocational expert for that matter – address whether the claimant "would have to undergo more than minimal 'vocational adjustment' to perform successfully the tasks" required of the jobs the vocational identified the claimant could do, or otherwise determine

REPORT AND RECOMMENDATION - 12

whether the skills required by the claimant's past work were "substantially similar to" the ones required of those jobs. Id. at 1223-24. Similarly, in this case, other than testifying that jobs such as payroll clerk would generate skills that could be readily transferred to skilled or semi-skilled work, the vocational expert did not provide any testimony as to the particular skills that would be generated or whether more than minimal vocational adjustment would be needed. The ALJ also did not make the specific findings necessary to make his step five determination here.

Defendant argues the ALJ "made all requisite findings in this case," because she relied on the vocational expert's testimony that plaintiff "had acquired payroll skills while performing her past relevant work as a payroll supervisor, which was skilled work," and because plaintiff herself had testified that her payroll skills involved cutting checks, collecting past due amounts, creating budgets, projecting income, and supervising payroll clerks, accounting clerks, and an accounting assistant. AR 29; ECF #14, p. 5 (citing AR 50). Again, though, the problem is that while the vocational expert may have testified that he reviewed the record as to plaintiff's work history and listened to her testimony regarding the same, he did not actually identify the skills she listed as being transferable. Rather, as pointed out by plaintiff, the vocational expert merely identified the type of job that would generate transferrable skills, but did not actually identify what those skills are. In addition, even if it were reasonable to infer such from the vocational expert's testimony, he still provided no testimony regarding vocational adjustment.

Citing Bray, defendant goes on to argue that the ALJ need only point to the evidence that supports her finding that a claimant had acquired transferable skills, and that the ALJ did so here by stating in her decision that she relied on the vocational expert's testimony and by finding that plaintiff had transferrable payroll skills. But this is substantially the same argument rejected by the Ninth Circuit Bray. There too, defendant had argued that SSR 82-41 did not require "specific

REPORT AND RECOMMENDATION - 13

findings when the ALJ relie[d] on the testimony of a [vocational expert] to determine whether a claimant ha[d] transferable skills." 554 F.3d at 1224. But the Ninth Circuit noted with approval, and thus adopted, the Second Circuit's conclusion that "specific findings on transferable skills are necessary *even where* the ALJ relies on" such testimony. Id. (citing Draegert v. Barnhart, 311 F.3d 468, 475-77 (2nd Cir. 2002)) (emphasis added).

Defendant asserts that to require more than what the vocational expert testified to in this case, would result in vocational experts having to "give extensive and detailed testimony" before an ALJ could rely on that testimony to make a determination concerning transferability of skills. ECF #14, p. 6. The undersigned finds defendant's fear here unjustified. First, as just discussed, the Ninth Circuit stated clearly in Bray that more is required than is being argued by defendant. Second, the vocational expert need only identify what those transferrable skills actually are and testify whether – in the case of individuals of advance age – more than a little, if any, vocational adjustment is needed. This most likely would require no more than the ALJ asking a few more questions to ferret out the necessary information. The ALJ then would only have to set forth in his or her decision, the specific vocational expert testimony upon which he or she relied to make the transferable skills determination. The undersigned does not find this too much to ask of the ALJ or vocational expert, and it is squarely in line with the holding in Bray.

III.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is

REPORT AND RECOMMENDATION - 14

unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to plaintiff's mental functional limitations, her residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to defendant to conduct further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

REPORT AND RECOMMENDATION - 15

474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 18, 2011**, as noted in the caption.

DATED this 3rd day of November, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16